Richmond, P. J.,
after stating the facts, delivered the opinion of the court.
The evidence in this case discloses the "fact to be that the *556 plaintiff, Moore, was in the employ of the defendant, Light-hall ; that during a portion of the time he was engaged in soliciting trade and was instructed by Lighthall to occasionally indulge in the luxury of treating customers. While so employed, Lighthall claims to have discovered that certain moneys and goods were disappearing, of which no account was made; that by taking an inventory and comparing it with the inventory of the previous year, together with the sales and purchases, he believed himself to be the loser to the extent of about $1,800, and ultimately fixed upon Moore as the guilty party, and agreed to settle with him on the basis of a note for $1,000, secured by a deed of trust, and to effectuate this caused the plaintiff to meet him at the office of his attorneys, where he was charged with an offense against the law, and given to understand, if not directly threatened, that unless the matter was settled satisfactorily to defendant he would be considered a culprit and dealt with accordingly; that being a married man and realizing the position he occupied, he did, notwithstanding his protestations of innocence, execute the two papers which he now seeks to cancel.
The contention of counsel for defendant, that the note and deed of trust was the result of a compromise, or based upon an account stated between the parties, is inconsistent with the allegations in the answer, as well as with the testimony of Lighthall. By the answer it is alleged that the “ plaintiff was indebted to the defendant in the sum of $900, for moneys received by plaintiff in the course of his employment by defendant, and for moneys converted to his own use while in said employment,” and the testimony shows that Ligthhall contemplated, unless some settlement was made, instituting criminal proceedings. It may be remarked also that the testimony absolutely fails to show any defalcation on the part of Moore.
Lighthall himself testifies that he was not expert enough to discover any shortage.
“ Q. You are not able to discover any shortage at this time ?
*557 “ A. I am not expert enough.
“ Q. You have not discovered anything but the $15.00 and the $8.85 ?
“ A. And the Wilson business.
“ Q. That was settled. But since that time you have not discovered any shortage except the $15.00 and the $3.85 which he took. Is that all?
“ A. I guess that is all.
“ Q. Do you know how much was due Mr. Moore on his salary outside of what you think he had taken when he left ?
“ A. No, sir.
“ Q. Did you ever take pains to find out ?
“ A. No, I do not think I ever did: I do not know how we did stand at the time he quit.”
The well recognized rule is, that: “ Where there is no coercion amounting to duress, but a transaction is the result of a moral, social or domestic force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction on the ground of undue influence, even though there may be no invalidity at law. In the vast majority of instances, undue influence naturally has a field to work upon in the condition or circumstances of the* person influenced which render him peculiarly susceptible and yielding — his dependent or fiduciary relation towards the one exerting the influence, his mental or physical weakness, his pecuniary necessities, his ignorance, lack of advice, and the like.”
Pomeroy’s Equity Jurisprudence, vol. 1, § 951, lays down this doctrine: “ Cases of an analogous nature may easily be put, where the party is subjected to undue influence, although in other respects of competent understanding. As, where he does act, or makes a contract, when he is under duress, or the influence of extreme terror, or of threats, or of apprehensions short of duress. For, in cases of this sort, he has no free will, but stands in vinculis. And the constant rule in equity is, that, where a party is not a free agent, *558 and is not equal to protecting himself, the court will protect him.”
In Bishop on Contracts, § 741, it is held that, “ One in another’s power, may, on application to the equity tribunal, have canceled' an inequitable bargain to which he was entrapped or practically compelled, though there has been neither technical fraud nor technical duress. In short any complications in which a party may find himself involved, whereby his act of contracting is not that of a free agent, may, at least in equity, be availed of by 'him to avoid it, as against those by whose procurement it was made.” See §742. _ _
_ _ The identical question here involved has received the consideration the appellate court of Illinois in the ease of Kieth v. Buck, 16 Ill. Ct. App. 121. In that case the court took occasion to comment favorably upon the language of Justice Scott in the case of James v. Roberts, 18 Ohio St. 548, wherein this language was used: “ Some allowance must always be made for the' imperfections of the human judgment under certain circumstances; the conduct of persons accused of crime, although thejr may be entirely innocent, is often most inexplicable. Such persons often magnify manifold the dangers that surround them. Under such circumstances their fears are easily wrought upon, and the law will not always require of them the exercise of that clear and accurate judgment that would otherwise be expected. Under the facts in the case we cannot regard the parties as standing in pari delicto.”
In both of the cases above referred to the relief prayed' for was granted. And so also was a similar result obtained in the case of Catlin v. Henton et al., 9 Wis. 496.
We think that the above recited principles are indisputably applicable to the case in hand. An employee is charged with a criminal offense —a crime well known to the statutes of this state. He is conducted, to the presence of his employer’s counsel, and there for the first time is confronted with the statement that his employer claims to have lost a *559 large sum of money and believes him to be the culprit. He is advised to deliberate upon the situation. A compromise is suggested and he is given to understand that unless he shall execute a note and secure the payment of the same upon real estate then standing in his name, charges will be preferred and that the jail will be his doom. Still protesting his innocence, and so' continuing to protest for a'period of four days, he ultimately executes the papers and then receives from his employer a letter of recommendation wherein he is extolled as a man of honesty, so strong in terms as even to cause him to utter exclamations of surprise. We do not think that there is any compounding of felony in this transaction, because the record does not disclose that any crime had been committed, but we do think there is sufficient evidence to establish the fact to be that the plaintiff executed the papers in question in the face of threats made by Light-hall, and that the proof fails to show any consideration moving from Lighthall to Moore. • And inasmuch as the only ground upon which the defendant can insist that the judgment should be reversed is that the findings are contrary to the evidence, we think that the rule heretofore' frequently announced by the supreme court of this state and by this court, to the effect that the verdict of the jury or the findings of the court will not be disturbed where there is sufficient evidence to support- the same, warrants us in affirming the judgment.
The judgment must be affirmed.

Affirmed.